# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:25-cv-01120 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| ATLIQ TECHNOLOGIES PVT. LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against AtliQ Technologies Pvt. Ltd. ("AtliQ" or "Defendant") for infringement of United States Patent Nos. 10,360,571 (the "'571 Patent"), 10,977,672 (the "'672 Patent"), 11,042,890 (the "'890 Patent"), and 12,039,550 (the "'550 Patent").

## THE PARTIES

1.      Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.      Upon information and belief, Defendant AtliQ is a company organized and existing under the laws of India, with a principal place of business located at 301/6/7 Ocean Complex, Vadiwadi, Vadodara 390023 India and may be served pursuant to the provisions of the Hague Convention.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5. AtliQ is subject to the general and specific personal jurisdiction of this Court, based upon its regularly conducted business in the State of Texas and, on information and belief, in the Eastern District of Texas ("District"), including conduct giving rise to this action.

6. AtliQ has conducted and does conduct business within the State of Texas.

7. AtliQ has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8. This Court has personal jurisdiction over AtliQ at least because AtliQ has made, used, offered to sell, sold, or put into service the accused products, systems, or services within the State of Texas and, on information and belief, within this District, thus committing acts of infringement within the District, and has placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Eastern District of Texas. AtliQ, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

9. This Court likewise has personal jurisdiction over AtliQ at least because, on information and belief, AtliQ has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over AtliQ would not offend traditional notions of fair play and substantial justice.

10. This Court has specific personal jurisdiction over AtliQ in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are

related to AtliQ's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1400(b) and 1391(c)(3) because AtliQ is a foreign corporation subject to suit in any district.

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

12.    Alpha Modus Corp. specializes in the development of innovative retail technologies.

13.    At the core of Alpha Modus's technology portfolio, including the Asserted Patents, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

14.    Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Asserted Patents.

15.    Alpha Modus has entered into several intellectual property licensing agreements outside of litigation. These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '571 PATENT

16.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,360,571 ("the '571 Patent") titled "Method For Monitoring And Analyzing Behavior And Uses Thereof," including the right to sue for all past, present, and future infringement. A true and correct copy of the '571 Patent is attached to this Complaint at Exhibit A.

17.     The '571 Patent issued from U.S. Patent Application Serial No. 14/335,429.

18.     The '571 Patent claims the benefit of U.S. Patent Application Serial No. 61/856,525, filed on July 19, 2013.

19.     The Patent Office issued the '571 Patent on July 23, 2019, after a full and fair examination.

20.     The '571 Patent is valid and enforceable.

21.     The '571 Patent relates to a method for monitoring and analyzing consumer behavior in real-time, particularly within retail environments. It utilizes various information monitoring devices to collect data about consumers, enhancing their shopping experience through targeted and personalized digital interactions.

22.     The inventors of the '571 Patent identified a critical need in the retail industry, especially brick-and-mortar stores, to adapt to the evolving shopping habits influenced by online retail and social media. The patent addresses the challenge of providing an enriched in-store experience that rivals online shopping, thus countering trends like showrooming.

23.     The '571 Patent provides several advantages over the prior art such as providing a method for real-time analysis and utilization of collected shopper data, including demographic, sentiment, and tracking information, to deliver personalized marketing, engagement, and promotional material directly influencing the consumer's purchasing decision.



*FIG. 1*



*FIG. 2*

24.    The '571 Patent describes and claims a specific method that involves using information monitoring devices, like video image devices, to gather data about shoppers. This data includes demographic characteristics (such as gender and age), sentiment, and tracking details (like movement and eye tracking). The patent details the process of analyzing this data in real-time and providing various responses, such as targeted marketing, personal engagement, or offering coupons, to enhance the shopping experience.

25.    Claim 1 of the '571 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about persons in a group of persons at a location, wherein
    (i) the persons are each in proximity of at least one of the one or more information monitoring devices at the location, wherein

(ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,

(iii) the one or more information monitoring devices comprise one or more video image devices;

(iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the persons, approximate age of the persons, and combinations thereof,

(v) the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices,

(vi) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices, eye movement of the persons tracked by the one or more video image devices, and combinations thereof,

(b) providing an opt-out option to the persons in the group of persons, wherein after receipt of an affirmation of the opt-out option from an opt-out person, the opt-out person is in the subset of the opt-out persons,

(c) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the persons in the group of persons, except for the subset of opt-out persons who have affirmatively opted-out, wherein the analyzed information comprises the demographic characteristic of the persons, the sentiment characteristic of the persons, and the tracking information of the persons; and

(d) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

(i) engaging the person based upon the analyzed information of the person, wherein the engaging is performed using one or more displays and content being displayed on the one or more displays is selected based upon the analyzed information,

(ii) sending a communication to a second person at the location who can then in real time directly interact with the person regarding at least a portion of the analyzed information,

(iii) providing marketing or advertising information to the person in real time based upon the analyzed information, wherein the marketing or advertising information is either provided to the person by a display at the location or by sending the marketing or advertising information to the mobile device of the person, and

(iv) providing a coupon to the person in real time based upon the analyzed information, wherein the coupon is either a printed out coupon or is a digital coupon.

## THE '672 PATENT

26.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,977,672 (the "'672 Patent") titled "Method And System For Real-Time Inventory Management, Marketing, And Advertising In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '672 Patent is attached to this Complaint at Exhibit B.

27.     The '672 Patent issued from U.S. Patent Application No. 16/985,001 filed on August 4, 2020.

28.     The '672 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014, ultimately claiming priority to a provisional application filed July 19, 2013.

29.     The Patent Office issued the '672 Patent on April 13, 2021, after a full and fair examination.

30.     The '672 Patent is valid and enforceable.

31.     The '672 Patent introduces a novel system for real-time inventory management, marketing, and advertising within a retail store setting.

32.     The '672 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of the increasing prevalence of online shopping and the phenomenon of showrooming. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail.

33.    The inventors of the '672 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

34.    The '672 Patent provides several advantages over the prior art, such as real-time inventory management and the ability to generate targeted promotions and advertising based on behavioral analytics. This approach aims to provide more relevant and engaging consumer experiences, thereby influencing purchasing decisions and potentially increasing in-store sales.



FIG. 1



FIG. 2

35.     The '672 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, display relevant product information and pricing, and generate promotions for customers based on real-time data analysis.

36.     Claim 1 of the '672 Patent reads:

1. A system for real-time inventory management, marketing, and advertising on a first visual display at a first visual display location in a retail store, comprising:
(a) a server comprising:
    (i) one or more server processors, and,
    (ii) a server memory storing computer-executable instructions that, when executed by the one or more server processors, cause the server to:
        (A) identify, via image recognition, an inventory of one or more retail products physically located at the first visual display location in the retail store,
        (B) display, on the first visual display, information about one or more of the one or more retail products physically located at the first visual display location,
        (C) determine, in real-time, current pricing information regarding the one or more retail products physically located at the first visual display location,
        (D) display, on the first visual display, the current pricing information regarding the one or more retail products physically located at the first visual display location,
        (E) receive, using one or more information monitoring devices at the first visual display location, real-time data of a customer, and
        (F) generate a promotion of one or more of the one or more retail products physically located at the first visual display location for the customer based on behavioral analytics.

**THE '890 PATENT**

37.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit C.

9

38.     The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

39.     The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014, ultimately claiming priority to a provisional application filed July 19, 2013.

40.     The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

41.     The '890 Patent is valid and enforceable.

42.     The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

43.     The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

44.     The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.



FIG. 1



FIG. 2

45.    The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

46.    Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about
    a person at a retail store, wherein
        (i) the person is in proximity to at least one of the one or more information
            monitoring devices at the retail store,
        (ii) the one or more information monitoring devices are operably
            connected to (A) a server, (B) one or more databases, or (C) both, and

(iii) the step of gathering information using the one or more information monitoring devices comprises

   (A) gathering object identification information of a product that the person is interested in purchasing, and

   (B) gathering sentiment information of the person with respect to the product;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

   (i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,

   (ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,

   (iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,

   (iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and

   (v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## **THE '550 PATENT**

47.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,039,550 (the "'550 Patent") titled "Method for Enhancing Customer Shopping Experience in a Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '550 Patent is attached to this Complaint at Exhibit D.

48.     The '550 Patent issued from U.S. Patent Application No. 17/590,605, filed on February 1, 2022.

49.    The '550 Patent is a continuation of prior applications tracing back through the family, including U.S. Patent No. 10,853,825 (filed July 11, 2019), and U.S. Patent No. 10,360,571 (filed July 18, 2014), ultimately claiming priority to a provisional application filed July 19, 2013.

50.    The U.S. Patent and Trademark Office issued the '550 Patent on July 16, 2024, after a full and fair examination.

51.    The '550 Patent is valid and enforceable.

52.    The '550 Patent introduces an innovative system for enhancing customer shopping experience in a retail store by monitoring and analyzing consumer behavior in real time—leveraging technologies such as MAC-address tracking, eye tracking, object recognition of goods on shelves, open APIs, and an advertising broker rules engine—to drive sales via engaging, personalized digital customer experiences.

53.    The '550 Patent addresses pressing challenges faced by brick-and-mortar retail in the face of showrooming and the dominance of online retail. It offers novel solutions to provide richer, data-driven, in-store experiences that strengthen customer engagement and counter competitive pressures, by providing real-time analytics and personalized outreach strategies.

54.    The inventors recognized a vital deficiency in conventional brick-and-mortar stores: the lack of real-time insight into in-store shopper behavior that online retailers routinely exploit. The '550 Patent bridges this gap by providing a technological framework that enables retailers to capture behavioral data and dynamically adjust marketing, merchandising, and customer support accordingly.

55.    The '550 Patent offers several advantages over the prior art, including real-time behavior monitoring capabilities and the ability to deliver on-the-spot, personalized outreach via

interactive displays or sales assistance informed by tracking data—thereby enhancing the relevance of consumer interactions and potentially increasing in-store conversion rates.

56.     The '550 Patent describes and claims a specific system architecture that includes information monitoring devices (e.g., MAC tracking, eye tracking, object identification technologies) to gather and analyze real-time behavioral and demographic data, which then drives interactive outputs like demographic-aware displays, assistance prompts at shelves, and purchase facilitation.

57.     Claim 1 of the '550 Patent reads:

1. A method comprising:
(a) obtaining an information analysis about the shopping activities of a plurality of persons, wherein,
    (i) the information analysis is an analysis of gathered information by one or more information monitoring devices about shopping activities of a plurality of persons,
    (ii) the gathered information comprises gathered traffic information of the plurality of persons, wherein the gathered traffic information comprises traffic information gathered by at least one of the one or more information monitoring devices, and
    (iii) the gathered information further comprises gathered product interaction information of the plurality of persons, wherein
        (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more information monitoring devices, and
        (B) the product interaction information is based upon type of interactions the persons had with one or more products, and
    (iv) the gathered information further comprises gathered object identification information, wherein
        (A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and
        (B) the object identification information comprises the one or more products that the persons interacted with during the product interactions;
(b) providing the information analysis to a brand entity for enhancing in-store shopping experience of customers of one or more brick-and-mortar retail stores, wherein
    (i) the brand entity is an entity that provides one or more brand products to one or more brick-and-mortar retails store; and,

    (c) enhancing the in-store shopping experience of the customers of the one or more brick-and-mortar retail stores by an experience from the brand entity selected from the group consisting of

        (i)  engagement of the customer based upon the information analysis, wherein the engagement is received by the customer using one or more displays and content of the engagement being displayed on the one or more displays is selected based upon the information analysis and based upon the one or more brand products,

        (ii)  engagement of the customer based upon the information analysis, wherein the engagement is received by the customer by a second person at the brink-and-mortar retail store who can directly interact with the customer based upon (A) the information analysis received by the second person by an electronic communication sent to the second person by a system at the brink-and-mortar retail store and (B) based upon the one or more brand products,

        (iii)  provision of marketing or advertising information directed to the customer based upon the analyzed information and based upon the one or more brand products, wherein the marketing or advertising information is received by the customer through a display at the one or more brick-and-mortar retail stores or by receiving the marketing or advertising information on a mobile device of the customer, and

        (iv)  provision of a coupon directed to the customer based upon the analyzed information, wherein the coupon is received by the customer either as a printed out coupon or as a digital coupon.

## **ATLIQ**

58.    AtliQ is an international software solutions and data analytics company that provides artificial-intelligence-based products and services for retail, manufacturing, and enterprise operations. AtliQ's publicly available materials describe it as a company focused on helping businesses achieve digital transformation through automation, data science, and machine-learning solutions.

59.    AtliQ emphasizes that it is research- and development-driven, specializing in emerging technologies such as artificial intelligence ("AI"), data science, machine learning, and the Internet of Things ("IoT"). AtliQ highlights its ability to deploy AI-driven vision systems, predictive analytics, and cloud-based data pipelines across multiple industries.

60.     AtliQ's stated goal is to deliver end-to-end digital and AI solutions that automate business processes, improve operational efficiency, scale for future growth, and enhance customer engagement. Its services integrate data engineering, computer vision, and intelligent automation to convert raw information from physical environments into actionable insights.

61.     The Accused Products in this case include AtliQ's retail-AI systems such as Smart Shelf Management, Targeted Advertising and Digital Signage, and Retail Analytics solutions. These products employ AI-powered cameras, sensors, and cloud-based analytics platforms to monitor in-store activity, identify product interactions, and manage inventory and digital advertising in real time.

62.     AtliQ describes its Smart Shelf Management solution as utilizing "AI-powered cameras" to track inventory levels and automatically trigger restocking when products are removed from shelves. AtliQ further advertises that its "digital signage and in-store displays can be personalized based on customer demographics and past purchases," demonstrating the use of computer-vision and behavioral analytics to tailor real-time content and marketing to individual shoppers.



https://www.atliq.ai/industry/retail

63.    AtliQ's retail analytics offerings are supported by its Data Analytics & Engineering Solutions, which integrate cloud technologies such as Microsoft Azure and Databricks for real-time ingestion, validation, and analysis of in-store camera data. These systems collectively use servers, databases, and AI-driven video image devices to gather, analyze, and respond to shopper and product information in real time, thereby practicing the methods claimed in the Asserted Patents.

64.    The Accused Products practice the patented systems and methods of the Asserted Patents.

65.    AtliQ has been aware of Alpha Modus and the Asserted Patents at least as early as the filing of this complaint.

66.    The financial gains accrued by AtliQ through the use of Alpha Modus's patented technology have been substantial, providing AtliQ with competitive advantages in the retail market.

67.    The benefits reaped by AtliQ through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

68.    This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by AtliQ, which has led to significant commercial gains for AtliQ at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT INFRINGEMENT OF THE '571 PATENT)

69.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

70.    AtliQ has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '571 Patent, including the Accused Products.

71.    The Accused Products utilize one or more information monitoring devices, including video image devices, to gather information about persons at a location, specifically in AtliQ's customer's retail stores.

72.    The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

73.    The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in stores.

74.    The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

75.    AtliQ has directly infringed the '571 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '571 Patent.

76.    The Accused Products satisfy each and every element of the asserted claim of the '571 Patent either literally or under the doctrine of equivalents.

77.    AtliQ's infringing activities are and have been without authority or license under the '571 Patent.

78.    As a direct and proximate result of AtliQ's infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

79.    Alpha Modus is informed and believes, and on that basis alleges, that AtliQ has been aware of the '571 Patent and its infringement thereof. Despite this knowledge, AtliQ has continued to make, use, sell, and offer for sale the Accused Products.

80.    Alpha Modus is informed and believes that AtliQ knew or was willfully blind to the patented technology of the '571 Patent. Despite this knowledge or willful blindness, AtliQ has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

81.    Alpha Modus is informed and believes that AtliQ has made no efforts to avoid infringement of the '571 Patent, despite its knowledge and understanding that its products and systems infringe the '571 Patent.

82.    Therefore, AtliQ's infringement of the '571 Patent is willful and egregious, warranting an enhancement of damages.

83.    As such, AtliQ has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '571 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

### (INDUCED PATENT INFRINGEMENT OF THE '571 PATENT)

84.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

85.    AtliQ is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '571 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '571 Patent.

86.    AtliQ's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '571 Patent.

87.    AtliQ's use of the Accused Products demonstrates specific intent to induce infringement of the '571 Patent. AtliQ encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '571 Patent.

88.    AtliQ's knowledge of the '571 Patent, combined with its ongoing use of the Accused Products, demonstrates AtliQ's knowledge and intent that the Accused Products be used in a manner that infringes the '571 Patent.

89.    AtliQ's actions and the manner in which the Accused Products are used by AtliQ's customers, consistent with AtliQ's promotions and instructions, demonstrate AtliQ's specific intent to induce infringement of the '571 Patent.

90.    Alpha Modus is informed and believes, and on that basis alleges, that AtliQ knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to

infringe by practicing, either themselves or in conjunction with its customers, one or more claims of the '571 Patent.

91.     As a direct and proximate result of AtliQ's induced infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

92.     Alpha Modus is entitled to recover from AtliQ compensation in the form of monetary damages suffered as a result of AtliQ's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

<u>**COUNT III**</u>

<u>**(DIRECT INFRINGEMENT OF THE '672 PATENT)**</u>

93.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

94.     AtliQ has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '672 Patent, including the Accused Products.

95.     The Accused Products embody a system for real-time inventory management, marketing, and advertising in a retail store setting, as claimed in the '672 Patent.

96.     The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '672 Patent.

97.     The functions include identifying, via image recognition, an inventory of retail products physically located at a display location in the store, displaying information about the products, determining and displaying current pricing information, receiving real-time data of a customer using one or more information monitoring devices, and generating promotions for the customer based on behavioral analytics.

98.     AtliQ has directly infringed the '672 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '672 Patent.

99.     The Accused Products satisfy each and every element of the asserted claim of the '672 Patent either literally or under the doctrine of equivalents.

100.     AtliQ's infringing activities are and have been without authority or license under the '672 Patent.

101.     As a direct and proximate result of AtliQ's infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

102.     Alpha Modus is informed and believes, and on that basis alleges, that AtliQ has been aware of the '672 Patent and its infringement thereof. Despite this knowledge, AtliQ has continued to make, use, sell, and offer for sale the Accused Products.

103.     Alpha Modus is informed and believes that AtliQ knew or was willfully blind to the patented technology of the '672 Patent. Despite this knowledge or willful blindness, AtliQ has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

104.     Alpha Modus is informed and believes that AtliQ has made no efforts to avoid infringement of the '672 Patent, despite its knowledge and understanding that its products and systems infringe the '672 Patent.

105.     Therefore, AtliQ's infringement of the '672 Patent is willful and egregious, warranting an enhancement of damages.

106.     As such, AtliQ has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '672 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

### (INDUCED PATENT INFRINGEMENT OF THE '672 PATENT)

107.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

108.    AtliQ is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '672 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '672 Patent.

109.    AtliQ's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '672 Patent.

110.    AtliQ's use of the Accused Products demonstrates specific intent to induce infringement of the '672 Patent. AtliQ encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '672 Patent.

111.    AtliQ's knowledge of the '672 Patent, combined with its ongoing use of the Accused Products, demonstrates AtliQ's knowledge and intent that the Accused Products be used in a manner that infringes the '672 Patent.

112.    AtliQ's actions and the manner in which the Accused Products are used by AtliQ's customers, consistent with AtliQ's promotions and instructions, demonstrate AtliQ's specific intent to induce infringement of the '672 Patent.

113.    Alpha Modus is informed and believes, and on that basis alleges, that AtliQ knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to

infringe by practicing, either themselves, or in conjunction with its customers, one or more claims of the '672 Patent.

114.    As a direct and proximate result of AtliQ's induced infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

115.    Alpha Modus is entitled to recover from AtliQ compensation in the form of monetary damages suffered as a result of AtliQ's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '890 PATENT)

116.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

117.    AtliQ has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the Accused Products.

118.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

119.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

120.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

121.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including

but not limited to directing a person to a product location, engaging the person based on the product, providing marketing or advertising information, and offering coupons.

122.    AtliQ has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

123.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

124.    AtliQ's infringing activities are and have been without authority or license under the '890 Patent.

125.    As a direct and proximate result of AtliQ's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

126.    Alpha Modus is informed and believes, and on that basis alleges, that AtliQ has been aware of the '890 Patent and its infringement thereof. Despite this knowledge, AtliQ has continued to make, use, sell, and offer for sale the Accused Products.

127.    Alpha Modus is informed and believes that AtliQ knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, AtliQ has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

128.    Alpha Modus is informed and believes that AtliQ has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

129.    Therefore, AtliQ's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

130.    As such, AtliQ has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

131.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

132.    AtliQ is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

133.    AtliQ's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '880 Patent.

134.    AtliQ's use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. AtliQ encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

135.    AtliQ's knowledge of the '890 Patent, combined with its ongoing use of the Accused Products, demonstrates AtliQ's knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent.

136.    AtliQ's actions and the manner in which the Accused Products are used by AtliQ's customers, consistent with AtliQ's promotions and instructions, demonstrate AtliQ's specific intent to induce infringement of the '890 Patent.

137.    Alpha Modus is informed and believes, and on that basis alleges, that AtliQ knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with its customers, one or more claims of the '890 Patent.

138.    As a direct and proximate result of AtliQ's induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

139.    Alpha Modus is entitled to recover from AtliQ compensation in the form of monetary damages suffered as a result of AtliQ's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII

## (DIRECT INFRINGEMENT OF THE '550 PATENT)

140.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

141.    AtliQ has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '550 Patent, including the Accused Products.

142.    The Accused Products embody a system for monitoring and analyzing consumer behavior and product interaction information in a retail store setting, as claimed in the '550 Patent.

143.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '550 Patent.

144.    The functions include gathering and analyzing information from information monitoring devices, including video image devices, to track consumer interactions with retail products, identifying products of interest, associating such information with consumer

demographic or behavioral data, and generating personalized marketing or promotional content based on the collected information.

145.    AtliQ has directly infringed the '550 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '550 Patent.

146.    The Accused Products satisfy each and every element of the asserted claim of the '550 Patent either literally or under the doctrine of equivalents.

147.    AtliQ's infringing activities are and have been without authority or license under the '550 Patent.

148.    As a direct and proximate result of AtliQ's infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

149.    Alpha Modus is informed and believes, and on that basis alleges, that AtliQ has been aware of the '550 Patent and its infringement thereof. Despite this knowledge, AtliQ has continued to make, use, sell, and offer for sale the Accused Products.

150.    Alpha Modus is informed and believes that AtliQ knew or was willfully blind to the patented technology of the '550 Patent. Despite this knowledge or willful blindness, AtliQ has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

151.    Alpha Modus is informed and believes that AtliQ has made no efforts to avoid infringement of the '550 Patent, despite its knowledge and understanding that its products and systems infringe the '550 Patent.

152.    Therefore, AtliQ's infringement of the '550 Patent is willful and egregious, warranting an enhancement of damages.

153.    As such, AtliQ has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '550 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

## (INDUCED PATENT INFRINGEMENT OF THE '550 PATENT)

154.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

155.    AtliQ is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '550 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '550 Patent.

156.    AtliQ's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '550 Patent.

157.    AtliQ's use of the Accused Products demonstrates specific intent to induce infringement of the '550 Patent. AtliQ encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '550 Patent.

158.    AtliQ's knowledge of the '550 Patent, combined with its ongoing use of the Accused Products, demonstrates AtliQ's knowledge and intent that the Accused Products be used in a manner that infringes the '550 Patent.

159.    AtliQ's actions and the manner in which the Accused Products are used by AtliQ's customers, consistent with AtliQ's promotions and instructions, demonstrate AtliQ's specific intent to induce infringement of the '550 Patent.

160.    Alpha Modus is informed and believes, and on that basis alleges, that AtliQ knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with its customers, one or more claims of the '550 Patent.

161.    As a direct and proximate result of AtliQ's induced infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

162.    Alpha Modus is entitled to recover from AtliQ compensation in the form of monetary damages suffered as a result of AtliQ's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## JURY DEMAND

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Alpha Modus prays for relief against AtliQ as follows:

(A)    An entry of judgment that AtliQ has infringed and is directly infringing one or more claims of each of the '571 Patent, the '672 Patent, the '890 Patent, and the '550 Patent;

(B)    An entry of judgment that AtliQ has infringed and is indirectly infringing one or more claims of each of the '571 Patent, the '672 Patent, the '890 Patent, and the '550 Patent;

(C)    An entry of judgment that the '571 Patent, the '672 Patent, the '890 Patent, and the '550 Patent are valid and enforceable;

(D)    An order pursuant to 35 U.S.C. § 283 permanently enjoining AtliQ, its officers, agents, servants, employees, attorneys, and those persons in active concert or

participation with it, from further acts of infringement of the '571 Patent, the '672 Patent, the '890 Patent, and the '550 Patent;

(E)     An order awarding damages sufficient to compensate Alpha Modus for AtliQ's infringement of the '571 Patent, the '672 Patent, the '890 Patent, and the '550 Patent but in no event less than a reasonable royalty, together with interest and costs;

(F)     A determination that AtliQ's infringement has been willful, wanton, deliberate, and egregious;

(G)     A determination that the damages against AtliQ be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)     A finding that this case against AtliQ is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)     An accounting of all infringing sales and revenues of AtliQ, together with post judgment interest and prejudgment interest from the first date of infringement of the '571 Patent, the '672 Patent, the '890 Patent, and the '550 Patent; and

(J)     Such further and other relief as the Court may deem proper and just.

Dated: November 12, 2025                    Respectfully submitted,

                                            */s/ Christopher E. Hanba*
                                            Christopher E. Hanba
                                            Texas Bar No. 24121391
                                            chanba@princelobel.com
                                            Ariana D. Pellegrino *
                                            Michigan Bar No. P79104
                                            apellegrino@princelobel.com
                                            Joshua G. Jones
                                            Texas Bar No. 24065517
                                            jjones@princelobel.com
                                            Bryan D. Atkinson
                                            Texas Bar No. 24036157
                                            batkinson@princelobel.com
                                              * Not admitted in Texas

                                            PRINCE LOBEL TYE LLP
                                            500 W. 5th Street, Suite 1205
                                            Austin, Texas 78701
                                            Tel: (617) 456-8000

                                            *Attorneys for Plaintiff*
                                            *Alpha Modus, Corp.*